No. 29,565.

L. L. TAYLOR, *Appellee*, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant*, et al.

(297 Pac. 1067.)

Opinion filed April 11, 1931.

*Luther Burns, J. E. DuMars,* both of Topeka, *Albert Watkins* and *Arthur C. Scates,* both of Dodge City, for the appellant.

*Carl Van Riper,* of Dodge City, and *A. L. Moffat,* of Kinsley, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one of ejectment to recover possession of a tract of land granted to a railway company for right of way and station grounds. The railway company, and lessees of the railway company who occupied the land for industrial purposes, were made defendants. Judgment was rendered for plaintiff, and the railway company appeals.

Lots 5 and 6 of section 35, township 26 south, range 24 west, were bounded on the north by the Arkansas river. Lot 6 was owned by James H. Crawford, and lot 5 was owned by John E. Crawford, who was James H. Crawford's son. Originally the tracts were farm land. Directly north, across the river, was the city of Dodge City. James H. Crawford platted a portion of lot 6 extending to the river as Crawford's second addition to Dodge City. South of Crawford's second addition was Perry's addition, and south of Perry's addition was Crawford's third addition. C. D. Perry and James H. Crawford joined in one plat of these additions, which was filed in March, 1888.

In October, 1887, the Crawfords contracted to convey to C. D. Perry land for railroad right of way and station grounds. Pursuant to the contract, conveyance was made to Perry by warranty deed dated December 16, 1887. The contract named no railway company. The deed to Perry named the Arkansas, Kansas & Colorado Railway Company. The Arkansas, Kansas & Colorado Railway Company was succeeded by the Chicago, Kansas & Nebraska Railway Company, and on April 16, 1888, Perry conveyed to that company by warranty deed. The defendant, the Chicago, Rock Island & Pacific Railway Company, is the successor of the Chicago, Kansas & Nebraska Railway Company. Hereafter, reference will be made simply to the railway company.

The land deeded to the railway company appears on the following sketch, and comprises the strip, first 130 feet and then 230 feet

wide at the east end, and extending westward between the parallel lines respectively 2,587 feet and 3,461 feet long; the tract designated "8"; and the tract north of "8" extending to the river.

The eastern portion of the land deeded to the railway company lay north of and adjoined Perry's addition. Fowler avenue extended through the three additions to the Arkansas river on the north. Use of Fowler avenue as a street was reserved in the deed to the railway company, but the railway company was privileged to use the street for railway purposes. ·

Following execution of Perry's deed to the railway company, and in 1889, a railroad track was constructed practically to the west side of the deeded land. A wye was constructed; a depot was erected approximately 700 feet west of the east end of the tract, stockyards were built west of the depot, and other station facilities were provided.

In 1897 the railway company constructed a bridge across the Arkansas river at the foot of Fowler avenue, and then extended its track into Dodge City. To do this, the curve from east of Fowler avenue into Fowler avenue, shown on the plat, was constructed. The evidence does not disclose the time when the Santa Fe track shown on the plat was constructed.

In 1898 the Crawfords made a warranty deed to the railway company of all the land lying east of Fowler avenue which had been embraced in the original Crawford deed to Perry and the Perry deed to the railway company. After the Crawford deed of 1898 was made, the railway company removed the depot to Dodge City. The stockyards were removed to a point east of the curve leading to the bridge. The old track west of Fowler avenue was taken up, and other station facilities west of Fowler avenue were dismantled. Since then there has been no depot or other building for the conduct of railway business in South Dodge, and such business has been transacted at the Dodge City station. Live stock has been regularly shipped from the relocated stockyards. South Dodge has appeared on the railway company's time card, and trains have infrequently stopped on signal for passengers.

After the railway company discontinued use of the land west of Fowler avenue for station and terminal purposes, the Crawfords fenced it, with other land west of the railroad, and used it for pasture. Afterwards the fenced land was plowed up, and precarious agriculture was carried on. In 1905 and 1907 the Crawford addi-

tions were vacated by the legislature. John E. Crawford removed from Dodge City in 1899, and James H. Crawford died in 1908. After that the land was leased to tenants. There was testimony by witnesses for plaintiff that fences, originally poorly constructed, deteriorated and would not turn stock. A tenant who had the land from 1918 to 1923 testified the fences finally fell down. Occupation of the land west of Fowler avenue by the Crawfords and their tenants was open, notorious, and exclusive. In September, 1912, heirs of Perry made a quitclaim deed to Jennie C. Hazelton, executrix of the estate of James H. Crawford. The purpose stated in the instrument was fulfillment of the agreement of Perry, contained in Crawford's deed to Perry in 1887.

East of the railway company's main track as relocated is a side track on which an elevator was built in 1915, and another in 1917, both of which handle grain. In July, 1923, plaintiff took deeds from the Crawford heirs.

Plaintiff's action was commenced in August, 1925. The petition alleged that in 1923 the railway company took possession of the land claimed by plaintiff, which consists of the land lying west of Fowler avenue and east of the Santa Fe right of way. The actual possession was taken by lessees of the railway company, who located and maintained a slaughterhouse, pens, and other facilities for buying, selling, and slaughtering live stock. Loading and unloading of live stock were done at the railway company's stockyards, approximately 100 yards east of the leased property.

The foregoing facts, except those referred to as embodied in testimony, are summarized from the district court's findings of fact. The court made the following finding of fact:

"It was admitted and the court finds that the property west of the east line of Fowler avenue was put back on the tax rolls and assessed and taxed to the Crawfords and their successors, and has been paid by them for many years. It was also admitted and the court finds that the defendant railway company has included the same land in its tax statements and also paid taxes on it continuously since the same was originally acquired."

The fact the railway company had returned its land for taxation, and had paid the taxes every year since the deed from Perry to the railway company was executed, was both proved and admitted. The railway company's admission concerning the land west of Fowler avenue simply was that the land "has been assessed and taxed to the Crawford heirs and their successors for many years, and such taxes were paid by the Crawford heirs and their successors."

Of course, the railroad property was not assessed and taxed by local taxing officers. Plaintiff pleaded a tax deed for all of lots 5 and 6 and other land in section 35, issued in 1892. Plaintiff also pleaded a tax deed for lot 6, in section 35, issued in 1893. As indicated above, lot 6 belonged originally to James H. Crawford, and apparently the county clerk had not excepted the railroad land on the county assessment roll, as he should have done. How long this continued the evidence does not disclose. There was no evidence the railroad land was ever segregated for taxation on the local tax roll from Crawford's large holding, or that Crawford's heirs ever paid taxes on the railroad land, except as they paid on larger tracts out of which the railroad land was granted.

The conclusion of the court from its findings of fact was that plaintiff is the owner in fee simple and entitled to possession of the land in controversy. The result is, the parties were left in the dark, and this court is in the dark, respecting the district court's view of the source and nature of plaintiff's title.

Plaintiff's petition contains the following:

"That prior to the removal from said grounds of said depot and other facilities for the handling of freight and passenger business, the defendant railway company at Dodge City, Kan., acting by E. H. Madison, its agent in that transaction, negotiated with James H. Crawford and John E. Crawford, and requested them to make a deed for all that portion of the tract hereinbefore described lying east of Fowler avenue; that said negotiations were carried on orally, and as a part thereof the said defendant railway company offered, promised and agreed orally that it would release and surrender all claims it had to that portion of said real estate hereinbefore described lying west of the east line of Fowler avenue as a part of the consideration for the deed which they were then being requested to make; that in consideration of said promises and agreement, on the part of the defendant railway company, the said James H. Crawford and John E. Crawford did on February 3, 1898, make and deliver to the defendant railway company a deed for said lands, lying east of Fowler avenue; that the said James H. Crawford and John E. Crawford thereupon reëntered upon said lands and occupied and used the same, claiming the title thereto, and said James H. Crawford continued to farm, occupy and use said lands lying west of the east line of Fowler avenue, until his death in July, 1908."

Plaintiff's brief in this court contains the following:

"It is the claim of the appellee that the title revested in the Crawfords about 1898, and that they had good title, free and clear of all claims of the appellants, from that time on, and that the appellee bought from the Crawford heirs and received a perfectly good title to the property; . . ."

This narrows the controversy, and enables this court to deal with it without undue waste of effort.

Additional facts must be stated as pertinent to the subject of reacquisition of title by James H. Crawford in 1898.

The 1887 contract between the Crawfords and Perry contained the following:

"The consideration of this contract and the conveyance to be made thereunder is the location and building of a railroad on said land, the building and maintaining of a depot, sidetracks, engine house, and such other buildings suitable for conducting and carrying on the passenger and freight business of said railroad at Dodge City. Said depot is to be located on the said land at a point not over 800 feet west of Bridge avenue; and in case said railroad company shall fail to keep each and all of the conditions of this agreement, or the deed to be made thereunder shall be null and void, and the land conveyed shall revert back to the said parties of the first part. It is further agreed that such portions of said land as shall be necessary shall be used for the purpose of the railroad right of way and buildings as aforesaid. Conveyance to be made upon construction of the road and building of the depot as above described."

The 1887 deed from the Crawfords to Perry contained the following:

"The consideration of this conveyance is the location and maintenance of depot, sidetrack and engine house and such other buildings suitable for carrying on freight and passenger business of the Arkansas, Kansas & Colorado Railway Company upon the above-described land. In case said railway company and (or) its assigns shall fail to keep all of the above covenants and obligations, this deed shall be void, and the lands herein conveyed shall revert to the grantors."

As noted above, the 1898 deed from Crawford to the railway company embraced nothing but the land east of Fowler avenue, which was already owned, occupied and used by the railway company for operation of its railroad. The deed was procured by E. H. Madison, acting for the railway company. The deed was dated February 3, 1898, was acknowledged on February 11, 1898, and was filed for record on February 19, 1898. At the time of the trial, Madison was dead, and James H. Crawford was dead. John E. Crawford, who as indicated left Dodge City in 1899, and who resides in California, was the sole witness who had personal knowledge of the transaction. His testimony, which is all the testimony there is on the subject, is abstracted as follows:

"Well, I remember that Mr. Madison had a paper that he wanted father and I to sign for the right of way of the Rock Island railroad, through his

land and down to the river. Father hesitated about signing the paper; there was something about it that wasn't quite satisfactory to him; and Mr. Madison insisted on him signing it, and insisted that the paper was all right, and that all the Rock Island Railroad Company wanted was the right of way through the land. . . .

"Mr. Madison said that if he sent the paper back, the railway company would be dissatisfied with him, and he insisted on witness' father signing the paper, and insisted that the paper was all right, and that only the right of way would be granted thereby.

"Q. You say that Mr. Madison said the railway company only wanted the right of way? A. Yes, he made that very plain.

"Witness' father told him that they (the railway company) were to pay him. Witness went with his father to Coolidge's office, and the deed was executed, either there or in Mr. Madison's office. The deed referred to was the only one made along about that time.

"Witness remembered the removal of the Rock Island depot from its location south of the river over to the north side of the river. The deed was signed before the depot was moved."

The consideration stated in the deed was $500. It is inferable from the testimony of John E. Crawford that something was said about what his father was to get for the deed. The railway company was to pay him. There is no hint that, besides the payable consideration stated in the deed, James H. Crawford was also to get a tract of land.

When the deed was made, the railway company had a track and station facilities west of Fowler avenue, had a right of way to them, and was operating the road. There was no evidence of conversation about removal of the station to Dodge City. So far as the testimony reveals the railway company did not then contemplate discontinuance of the existing station. If the railway company did contemplate discontinuance of the station there is no evidence it informed the Crawfords of the plan.

John E. Crawford said Madison made it very plain all he wanted was a right of way. If that were all, and the right of way he got by the deed ended at the east line of Fowler avenue, then Madison was giving away, in addition to the stated consideration of $500, a perfectly good railroad track, stockyards, and other station facilities, in addition to land west of Fowler avenue. It does not seem likely Madison relinquished all these improvements, because the railway company soon removed them, and so far as the evidence discloses, did so without objection from James H. Crawford. But the conversation testified to would include improvements just as much as the land, unless we indulge in pure guesswork.

John E. Crawford said his father hesitated about signing the deed; there was something about it that was not quite satisfactory. What James H. Crawford was dissatisfied about nobody knows. The subject of compliance by the railway company with the provisions contained in the Crawford contract with Perry and the deed to Perry, concerning establishing a station, was not, so far as the evidence shows, discussed. The station had been in existence for nine years, and there is no evidence James H. Crawford ever made any objection that the station facilities did not satisfy the consideration stated in the contract and the deed. While it is not material, there could have been no forfeiture for breach of condition subsequent. If there had been basis for forfeiture in 1898, action for that purpose was barred, and action for damages for failure of consideration was barred. However, there is no evidence that the subject of reverter entered into the negotiations resulting in the deed of 1898.

Plaintiff's brief contains the following:

"When the railway company had built its bridge and railway track north across the river, and desired to move its depot and terminal business across the river into Dodge City, the question of the reversion of the title to the Crawfords arose. We know it arose because of the negotiations with the Crawfords for a new deed for the portion of the land the company desired to retain and use as a right of way. There could have been no other reason for procuring the deed made on February 3, 1898."

This is not rational inference from proved facts, it is *brutum fulmen;* and the statement flies in the face of the testimony of plaintiff's witness, John E. Crawford. The curve of the railroad shown on the plat, from a point east of Fowler avenue northward toward the new bridge, entered block 10 of Crawford's second addition near the southeast corner of the block, and entered Fowler avenue near the northwest corner of the block. James H. Crawford owned this block. The subject of the conversation with Madison was a right of way through James H. Crawford's land down to the river. The subject was not what Madison would grant, but what the paper Madison wanted Crawford to sign would grant; and Madison said only the right of way would be granted.

The 1898 deed did not grant a right of way through Crawford's land down to the river. Why it did not is a matter of speculation and conjecture. John E. Crawford's evidence goes far to establish ground for reformation. But in view of the fact the railway company held under James H. Crawford's warranty deed, and went right on paying taxes on the land west of Fowler avenue, it would be easier to surmise an oral license to James H. Crawford to fence

and use that land with his other land, than it would be to surmise an oral surrender of the fee of the land.

Without the testimony of John E. Crawford, existence of an oral contract pursuant to which James H. Crawford took possession is chimerical, and because the argument in plaintiff's brief is based on surrender of reversionary interest by Crawford and surrender of title by the railway company, pursuant to oral agreement, it is not necessary to extend this opinion further.

The judgment of the district court is reversed, and the cause is remanded to the district court with direction to set aside its conclusion that plaintiff is owner and entitled to possession of the land in controversy, and to enter judgment for the railway company.

SLOAN, J., not participating.